IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SALMA K. ALI,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendants.

                                                       /

No. 07-03628 JSW

**ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Now before the Court is the motion of Plaintiff Salma K. Ali ("Ali") for summary judgment and the cross-motion of the Commissioner of the Social Security Administration ("Commissioner") for summary judgment. Pursuant to Civil Local Rule 16-5, the motions have been submitted on the papers without oral argument. Having carefully reviewed the administrative record and considered the parties' papers and the relevant legal authority, the Court hereby grants Ali's motion for summary judgment and denies Defendant's cross-motion for summary judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Ali brings this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner denying her request for Social Security benefits. At the time of the decision at issue, Ali was 43 years old. (Court Transcript ("Tr.") at 69.) She has the equivalent of an eighth grade education in her native country and speaks some English. (Tr. at

266.) Ali suffers from pain and weakness relating to an injury to her left knee. (Tr. at 271.) Prior to October 2002, Ali had worked at a Ross Stores warehouse. (Tr. at 272, 269.) Her primary job was to open boxes of shoes and place tags on the shoes inside. (Tr. at 269.) Ali stopped working in October 2002 due to knee pain and weakness in her leg. (Tr. at 271-272.)

In 1997, Ali was involved in a motor vehicle accident in which she sustained an injury to her left knee. (Tr. at 271.) Ali subsequently had three operations on her knee in 1998, 1999 and 2003. (*Id*.) She continued to work but experienced significant pain after the surgeries. (Tr. at 271, 214-216.) On September 29, 2002, Ali was taking out the garbage at work and fell and hit her knee. (Tr. at 271.) This was the last time Ali worked.

After her injury, Ali received initial treatment at Kaiser Permanente. (Tr. at 141-162.) Her initial treatment was conservative. (Tr. at 154-156.) On January 15, 2003, Ali underwent a physiatry consultation at the Redwood Rehab Medical Group, Inc. (Tr. at 218.) On February 18, 2003, Ali was given an orthopaedic evaluation by Dr. Clarence Boyd. (Tr. at 204.) Dr. Boyd diagnosed a left lateral knee contusion which had resolved and healed. (Tr. at 212.) Dr. Boyd concluded that Ali was not subject to partial or total disability resulting from her injury on September 29, 2002. (Tr. at 271.)

In May 2003, Ali visited Dr. Dale Townsend, the surgeon who had recently performed surgery on Ali. (Tr. at 142.) Dr. Townsend diagnosed Ali with acute chronic patellofemoral pain in her left knee. (*Id*.) In November 2003, Ali sought out the services of a chiropractor, Dr. Cheri Roberts. (Tr. at 169-170.) Dr. Roberts reported that Ali was suffering from chronic pain syndrome. (Tr. at 170.)

On March 17, 2004, Ali visited the offices of Dr. Vincent Baldwin. (Tr. at 166-168.) Dr. Baldwin reported in a Primary Treating Physician's report that Ali's examination yielded normal results. (*Id*.) Dr. Baldwin stated that Ali complained of exquisite pain and difficulty sleeping. (*Id*.) Ali reported pain at a level of 7 out of a possible 10, which with medication was reduced to 3 of 10. (*Id*.)

In May 2004, Ali visited the offices of Dr. Tulsidas Gwalani, an interventional pain management specialist. (Tr. at 187.) Dr. Gwalani noted severe pain on flexion of Ali's right

knee. (Tr. at 193.) Dr. Gwalani diagnosed Ali with left knee joint contusion, left knee joint contracture secondary to aggravation of injury, left knee joint effusion, lumbar sprain/strain, and left lower extremity radicular pain. (Tr. at 193.) Dr. Gwalani's recommended treatment included left knee joint intraarticular injections, physical therapy and medication. (Tr. at 188, 194.) Dr. Gwalani subsequently performed 3 intraarticular steroid and lidocaine injections in Ali's left knee joint on June 9, 2004, July 21, 2004 and April 19, 2005. (Tr. at 188, 197, 225.)

On April 12, 2004, Ali applied for Disability Insurance Benefits and Supplemental Security Income. (Tr. at 64.) During a Physical Residual Capacity Assessment conducted on June 24, 2004, a state medical consultant reported that Ali had an increased sensitivity to pain compared to the general population. (Tr. at 176.) The consultant further noted that Ali's pain response outweighed the physical findings. (Tr. at 183.)

On June 29, 2004, the Social Security Administration ("SSA") denied Ali's application. (Tr. at 26-30.) On October 8, 2004, the SSA denied Ali's Request for Reconsideration. (Tr. at 36-41.) Ali timely filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. at 42-45.)

On October 11, 2004 and October 24, 2004, Dr. Gwalani performed a diagnostic left-sided lumbar sympathetic block at the L3 level, a lumbar sympatheticogram and a pulse oximetry. (Tr. at 237-239.) Based on the results, Dr. Gwalani diagnosed Ali with left knee joint pain, left lower extremity radicular pain, reflexive sympathetic dystrophy of left lower extremity (Type I or II), complex regional pain syndrome, left knee joint effusion, and left knee joint contusion. (Tr. at 237.)

Ali underwent work capacity testing at Bay Area FCE on June 3, 2005. (Tr. at 129-134.) Steve Moon, BS, CWCE ("Moon") administered a series of tests to determine Ali's physical capacity. (*Id*.) Although Ali was able to complete all of the tests, she appeared to demonstrate moderate to severe pain during the activities. (Tr. at 134.) Moon opined that although Ali could work at the sedentary level, Ali would not be able to obtain employment due to the numerous accommodations she would require. (*Id*.)

On June 30, 2005, Ali, along with her attorney Dennis J. Thornton, and vocational expert John Velton, appeared at the hearing before an Administrative Law Judge ("ALJ"). (Tr. at 260.) After the hearing, Ali's husband Barkat Ali submitted testimony via written declaration. (Tr. at 136.) Barkat Ali's testimony described his wife's symptoms and her difficulties in conducting her daily tasks. (Tr. at 136-137.) He stated that Ali's condition had continuously declined. (Tr. at 136.) Barkat Ali described his wife's reactions to her various medications and explained that she requires assistance showering, getting dressed and going to the bathroom. (*Id.*)

On September 22, 2005, the ALJ issued a decision finding that Ali was not disabled and therefore was not entitled to benefits because she retained the residual functional capacity to perform a significant number of jobs in the national economy. (Tr. at 18-23.) The ALJ found that Ali had the ability to perform a wide range of sedentary exertional work. (Tr. at 21.) Ali's request for administrative review was denied on July 17, 2008 by the Appeals Council. (Tr. at 6-8.)

On November 16, 2005, and April 4, 2006, after the ALJ had issued his decision, Ali visited the Pain Management Center at the University of California, San Francisco Medical Center ("UCSF"). (Tr. at 251, 254.) Dr. Arul Doraiswamy noted that Ali did not appear to be in acute distress. (Tr. at 258.) However, after an examination of Ali, Dr. Doraiswamy opined that Ali suffered from "complex regional pain syndrome." (Tr. at 257-259.)

In late November, Ali also visited with Dr. Arun Mehta. (Tr. at 253.) Dr. Mehta described Ali's causalgia as reflexive sympathetic dystrophy brought on by her car accident and subsequent surgeries. (Tr. at 251-253.) Dr. Mehta assessed Ali's pain as "moderate" and noted that she had severe deficiencies in her lower extremity. (*Id.*)

## ANALYSIS

**A.    Standard of Review of Commissioner's Decision to Deny Social Security Benefits**

A federal district court may not disturb the final decision of the Commissioner unless it is based on legal error or the fact findings are not supported by substantial evidence. 42 U.S.C. § 405(g); *Sprague v. Bowen*, 812 F.2d 1226, 1229 (9th Cir. 1987). Considering the

4

administrative record as a whole, "[s]ubstantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). To determine whether substantial evidence exists, courts must look to the record as a whole, considering both evidence that supports and undermines the ALJ's findings. *Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988). An ALJ's decision must be upheld, however, if the evidence is susceptible to more than one reasonable interpretation. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

**B.      Legal Standard for Establishing a Prima Facie Case for Disability.**

The claimant has the burden of establishing a prima facie case for disability. *Id*. at 1452. The ALJ follows a five-step process in determining whether the claimant disabled. 20 C.F.R. § 404.1520. First, the claimant must not be engaged in substantial gainful activity. § 404.1520(b). Second, the claimant must have a severe impairment. § 404.1520(c). Third, if the claimant's impairment meets or equals one of the impairments listed in Appendix 1 to Subpart P of Social Security Regulation No. 4 (a list of impairments presumed severe enough to preclude work), claimant will be found disabled without consideration of age, education, or work experience. § 404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner will assess and make a finding about the claimant's residual functional capacity[1] ("RFC") based on all relevant medical and other evidence in the claimant's case record in order to evaluate whether the claimant can do his or her past work. Finally, if the claimant cannot continue with past work, the ALJ must determine whether the claimant is able to do any other type of work. § 416.920(g)(1). If the ALJ finds that the claimant is not disabled at any step along the way, the claimant is not disabled and there is no need to continue subsequent steps of the analysis. § 404.1520. If the claimant can still perform her past work, she will not be found disabled. § 404.1520(f).

---

[1] RFC is the most an individual can do in a work setting despite his or her limitations. 20 C.F.R. § 404.1545(a)(1).

5

The claimant has the burden of proof at steps one through four; the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). In the fifth step, if the claimant's impairment prevents her from making an adjustment to any other work in the national economy, she will be found disabled. § 404.1520(g). The burden is on the Commissioner to demonstrate that if the impairment prevents the claimant from doing past relevant work, the claimant's age, education, work experience, and RFC are considered to see if the claimant is capable of performing other work that exists in the national economy. *Bray v. Comm'r of Soc. Sec.*, 554 F.3d 1219, 1222-23 (9th Cir. 2009); *see also* § 416.920(g). The claimant is not entitled to benefits if she can adjust to other work. § 416.920(g).

Here, the ALJ determined that Ali was not disabled because (1) her impairments were severe but did not meet or equal the level of severity required by the Listing of Impairments in Appendix 1 of Subpart P, Regulation No. 4; and (2) her impairments did not prevent the performance of jobs which exist in the local and national economy. (Tr. at 18.)

**C. The ALJ's Determination that Ali is Not Disabled is Not Supported by Substantial Evidence and is Not Free of Legal Error.**

**1. ALJ Improperly Failed to Consider Lay Witness Testimony.**

Ali claims that the ALJ improperly disregarded the letter written by her husband in evaluating her credibility. (Plaintiff's Mot. at 15-16.) The ALJ is required to account for all lay witness testimony in the discussion of his findings. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th Cir. 2006) (citing *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)). Lay testimony as to a claimant's symptoms is competent evidence which the ALJ must take into account unless he expressly determines to disregard such testimony, in which case he must give reasons that are germane to each witness. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). "Where the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout v. Comm'r*, 454 F.3d 1050, 1056 (9th Cir. 2006).

The Commissioner's reliance on *Vincent v. Heckler*, 739 F.2d 1393 (9th Cir. 1984), for the proposition that the ALJ need not address the statements of lay witnesses is misplaced.

6

(Opp. at 6.) In *Vincent*, the court held that an ALJ may discount lay testimony if it conflicts with medical evidence. 739 F.2d at 1394; *see also Lewis*, 236 F.3d at 511 (holding that if lay testimony conflicts with medical evidence, the ALJ may properly discount the testimony). Here, the ALJ made no express determination to disregard the testimony of Barkat Ali. Nor did the ALJ decide whether it conflicted with the objective medical evidence.

Here, Barkat Ali wrote a letter describing Ali's daily activities and symptoms. (Tr. at 136-137.) Barkat Ali testified to assisting his wife in getting out of bed, getting dressed and going to the bathroom. (*Id*.) Besides Ali's own testimony, the ALJ had only objective medical evidence to consider. If credited, the testimony of Ali's husband would have added substantial weight to Ali's claims of intense pain and debilitation. Further, the testimony would have corroborated Ali's claims at the hearing that she was unable to complete many of life's basic tasks without assistance. Therefore, the Court cannot find that no reasonable ALJ, when fully crediting the testimony of Ali's husband, could have reached a different disability determination. *See Stout*, 454 F.3d at 1056. Accordingly, the ALJ erred in his failure to expressly address Barkat Ali's testimony.

### 2. ALJ Improperly Determined Plaintiff's RFC.

Ali contends that the ALJ's RFC was legally flawed and led to his erroneous determination that Ali had the capacity to perform jobs existing in significant numbers in the local and national economy. (Plaintiff's Mot. at 15.) RFC measures the greatest extent of tasks that an individual can perform after considering the effects of the physical and/or mental limitations that affect her ability to work. 20 C.F.R. § 404.1545(a)(1). Specifically, Ali contends that the ALJ failed to discuss why he rejected the Functional Capacity Evaluation, dated June 3, 2005, conducted by Moon. (Plaintiff's Mot. at 15.) The Commissioner argues that the Functional Capacity Evaluation is not medical evidence. (Opp. at 7-8.)

An ALJ must consider medical evidence provided by "acceptable medical sources." 20 C.F.R. § 404.1513(a). Additionally, a claimant may use evidence from "other sources" to show the severity of an impairment. 20 C.F.R. § 404.1513(d). In cases involving chronic pain syndrome, "third-party information, including evidence from medical practitioners who have

provided services to the individual, and who may or may not be 'acceptable medical sources,' is often critical in deciding an individual's credibility." SSR 03-2p, 2003 WL 22399117, at *7 (Oct. 20, 2003). "Disregard of this evidence violates the Secretary's regulation that he will consider observations by non-medical sources as to how an impairment affects a claimant's ability to work." *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993) (quotations omitted) (citing 20 C.F.R. § 404.1513(e)(2)). If the ALJ wishes to discount the testimony of the "other sources," he must give reasons that are germane to each witness. *Id*. at 919; *see also Stout*, 454 F.3d at 1053 (holding that lay testimony cannot be disregarded without comment).

Here, Ali has not offered evidence supporting the proposition that Moon, a "BS, CWCE," falls under any of the enumerated categories of section 404.1513(a). Based on the information available to the Court, Moon's Functional Capacity Evaluation does not appear to qualify as medical evidence. However, pursuant to section 404.1513(d), Moon qualifies as an "other source." Ali may therefore use Moon's Functional Capacity Evaluation to demonstrate the severity of her impairment. *See* 20 C.F.R. § 404.1513(d).

Moon provided a report describing Ali's limitations and symptoms. (Tr. at 129-134.) If credited, Moon's report may have added support to Ali's claims. The ALJ failed to give specific reasons for rejecting the Functional Capacity Evaluation conducted by Moon. (Tr. at 18-23.) The Court finds that the ALJ erred in his failure to expressly address Moon's report.

## CONCLUSION

For the foregoing reasons, the Court hereby GRANTS Ali's motion for Summary Judgment and DENIES Commissioner's Cross-Motion for Summary Judgment. This matter is HEREBY REMANDED to the Social Security Administration for reconsideration of Ali's alleged disability.

**IT IS SO ORDERED.**

*Jeffrey S. White*

Dated: November 13, 2009

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE